**JEFFERSON COUNTY BOARD OF EDUCATION, Petitioner,**

v.

**S.B., individually and as parent and next fried of J.B., as minor, Respondent.**

Civil Action No. CV–11–J–1696–S.

United States District Court,
N.D. Alabama,
Southern Division.

May 26, 2011.

Carl E. Johnson, Jr., Melissa Burkett McKie, Bishop Colvin Johnson & Kent LLP, Birmingham, AL, for Plaintiff.

Rachel L. McGinley, Deborah A. Mattison, Wiggins Childs Quinn & Pantazis LLC, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

LYNWOOD SMITH, District Judge.

This action is before the court on the motion of petitioner, the Jefferson County Board of Education, for "Emergency Preliminary and Permanent Injunctive Relief, or, in the Alternative, for Emergency Stay of Administrative Order."[1] In substance, that motion asks this court to enjoin or stay the enforcement of an order entered by an administrative hearing officer on May 19, 2011, under the putative authority of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), and directing petitioner to permit respondent's son—the minor student, J.B.—to attend commencement exercises at Clay–Chalkville High School to be held on the evening of Thursday, May 26, 2011.[2]

The bedrock issue in this case is whether excluding J.B. from participating in the commencement ceremony at Clay–Chalk-ville High School ("CCHS") will deprive him of an entitlement under the Individuals with Disabilities Education Act ("IDEA") to a Free Appropriate Public Education ("FAPE"). *See* 20 U.S.C. § 1401(9) (defining "free appropriate public education" as used in the statute). The hearing officer below decided that it did.

Respondent has presented to this court numerous, ardent arguments regarding J.B.'s reformation since his expulsion from CCHS during October of 2009 for possession of a pistol on school property, and the importance to him of participating in the graduation ceremonies. More compellingly, the mother of the minor student, S.B., has fervently advocated the entitlement she contends her son has earned not to be punished "repeatedly" for the same, past mistakes. These arguments do not fall on deaf ears, but this court is not a roving commissioner on questions of whether parties are given what they deserve. Instead, the basis of the hearing officer's jurisdiction below, and accordingly the basis of this court's review of the decision that officer rendered, is whether the decision not to allow J.B. to participate in commencement ceremonies deprives him of a FAPE. This court holds that it does not, and that the hearing officer fatally erred in several respects: *i.e.*, (1) graduation, at least in this instance, was not part of a FAPE, but was denied J.B. as part of a generally applicable disciplinary policy unrelated to his disability; (2) the hearing officer improperly reversed the burden of persuasion; and (3) there is no evidentiary basis for the hearing officer's determination that J.B. was deprived of a FAPE by not being returned to CCHS for his last semester of high school. As that decision was in error, petitioner's motion is due to be granted.

<hr/>

1. Doc. no. 2.

2. Doc. no. 4, Ex. 23 (copy of the order).

## I. SUMMARY OF FACTS

The court will not state the facts in great detail, as they already are part of the administrative record admitted and discussed below. However, a brief summary of the relevant facts is in order.

J.B. attended Clay–Chalkville High School for the first two years of his high school career. On October 29, 2009, he was removed from school after police discovered a handgun (with the serial number filed off) tucked into his waistband, and following his attempt to place the weapon in the purse of another student, and his offer to sell the "glock" to another student.[3] J.B. had previously been diagnosed with a "specific learning disability" and given accommodations under the IDEA and, accordingly, a meeting was held on November 10, 2009 to determine whether the incident was a manifestation of his condition.[4] His IEP Team concluded that it was not.[5] He was expelled for one year.[6] J.B.'s mother, an attorney representing J.B., and school officials had a conference in which the school board offered to provide "services for that one year of expulsion," but made clear that he would "then finish up his next year at Independent Study at the Alternative School."[7] Records indicate his mother requested at this meeting that he begin his expulsion at Rushton School, a private not-for-profit academy with which the school district had a contractual relationship. The school district agreed to pay his fees and, according to the hearing officer, "worked diligently to promptly obtain admission to Rushton for [J.B.]."[8]

Towards the end of the one-year expulsion, in September of 2010, J.B.'s mother contacted the Jefferson County Director of Exceptional Children, and stated her belief that "Rushton ha[d] been a blessing"; she requested that J.B. be "allowed to continue receiving services at Rushton School for the remainder of the academic year and upon completion of all academic requirements, [be] allowed to participate in the commencement ceremony as a senior at [CCHS]."[9] The school district arranged for J.B. to remain at Rushton, but it is unclear whether there was any discussion of his participation in graduation exercises at that point in time.

Subsequently, J.B.'s IEP was revised, as required, on December 17, 2010. It again indicated that his mother was concerned about J.B.'s participation in graduation exercises.[10] It appears that the mother contacted the principal at CCHS on January 3, 2011. He said he "did not want to get [her] hopes up...."[11] Subsequently, at least by March 23, 2011, a decision was made not to permit J.B. to participate in commencement at CCHS.[12]

After that decision was made, J.B.'s mother requested an IEP meeting, stating that denying him graduation from CCHS was a violation of his rights under the

---

3. Doc. no. 4, Ex. 1, at 1 (dated October 29, 2009); doc. no. 4, Ex. 2, at 1; doc. no. 4, Ex. 16, at 2.

4. Doc. no. 4, Ex. 2, at 1–2; doc. no. 4, Ex. 5 (IEP Class III Review by J.B.'s IEP team).

5. Doc. no. 4, Ex. 5, at 2.

6. Doc. no. 4, Ex. 2, at 2; doc. no. 4, Ex. 5, at 1–3.

7. Doc. no. 4, Ex. 2, at 2.

8. Doc. no. 4, Ex. 23, at 10.

9. Doc. no. 4, Ex. 7, at 1–2.

10. Doc. no. 4, Ex. 8, at 1.

11. Doc. no. 4 (transcript of administrative hearing), at 33–34.

12. *See* doc. no. 4, Ex. 9, at 1.

IDEA.[13] The school district took the position that J.B. had been expelled from CCHS and, as a result, had not attended the school for well over one and a half years. They considered his presence at the ceremony potentially disruptive, and were concerned it would send the "wrong signal" to students, teachers, and other members of the school community.[14] Ultimately, the decision went to a hearing officer who made the following, relevant specific findings:

1) That the child's educational placement decision in the fall of 2010 following the one year expulsion his year [*sic*] was done in a way that denied the child a FAPE.

2) That the graduation activities and exercises scheduled for [CCHS] on May 26, 2011 in which the child seeks to participate is an extracurricular activity envisioned by the IEP team as part of the delivery of a FAPE through the IEP put in place for the child as of December 17, 2010.[15]

## II. LEGAL STANDARDS

### A. Statutory Definition of a FAPE

(9) **Free appropriate public education**—The term "free appropriate public education" means special education and related services that—

(A) have been provided at public expense, under public supervision and direction, and without charge;

(B) meet the standards of the State educational agency;

(C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and

(D) *are provided in conformity with the individualized education ["IEP"] program required under section 1414(d) of this title.*

20 U.S.C.A. § 1401(9) (emphasis supplied).

### B. Standard of Review

■ "Whether an IEP provided FAPE is a mixed question of law and fact subject to *de novo* review.... To the extent this issue involves the interpretation of a federal statute, it is a question of law ... review[ed] *de novo*." *C.P. v. Leon County School Bd. Florida*, 483 F.3d 1151, 1155–56 (11th Cir.2007) (citations omitted). "[T]he district court judge conducts an entirely *de novo* review of the ALJ's findings and has discretion to determine the level of deference it will give to the ALJ's findings." *Id.* at 1156 n. 4 (citations omitted).

## III. DISCUSSION

Based upon the court's independent review of the record before the hearing officer, the relevant law, and the decision of the hearing officer, the court finds three reasons why the hearing officer's determination is flawed. Each of these reasons, independently, would be reason to grant the injunction against enforcement of that decision sought by petitioner, the Jefferson County Board of Education.

### A. Graduation Was Not Part of J.B.'s FAPE or His IEP

■ In the brief time within which this decision was required to be rendered, the court was only able to locate two decisions discussing whether participation in commencement exercises is part of the FAPE guaranteed students under IDEA. Both of

---

**13.** Doc. no. 4, Ex. 11, at 1.

**14.** Doc. no. 4 (transcript of administrative hearing), at 95–98.

**15.** Doc. no. 4, Ex. 23 (hearing decision), at 25–26.

those decisions suggest it is not. In *Coleman v. Newburgh Enlarged City School Dist.*, 503 F.3d 198 (2d Cir.2007), for example, the Second Circuit wrote, admittedly in *dicta*, that:

> As a broader matter, we are not persuaded that a disabled child has a right, under the IDEA, to graduate on a date certain *or from a particular educational institution—specifically, the child's original school rather than an IAES.* The IDEA's mandate is that all disabled children be given a "free appropriate public education." 20 U.S.C. § 1412(a)(1)(A); *see Bd. of Educ. v. Rowley*, 458 U.S. 176, 181, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (interpreting the predecessor statute to the IDEA). In fulfilling this mandate, there are no general time and manner requirements placed on the states other than those provided in the IDEA and created by the states.

*Id.* at 205–06 (emphasis added). Because the IDEA itself is silent as to commencement exercises, the Second Circuit reasoned that there was no basis upon which a court could order a school to permit a child to participate in such a ceremony. *Id.* This court finds that reasoning persuasive.

The only other case uncovered in the court's search for relevant authorities, an unpublished District Court decision, is even more emphatic: "[B]eing barred from graduation ceremonies obviously did not deny [the student] a FAPE." *Board of Education of Arlington Heights Sch. Dist. No. 25 v. Illinois State Board of Education*, No. 98 C 5370, 2001 WL 585149, at *9 (N.D.Ill. Mar. 19, 2001).

In addition to these persuasive authorities, the statutory and regulatory citations relied upon by the hearing officer themselves indicate that, because the basis for J.B.'s exclusion from graduation exercises was not related to his disability, that exclusion did not deny him a FAPE. It is undisputed in this action, at least as far as the record indicates, that J.B.'s disciplinary infraction, bringing a gun to school, "was *not* a manifestation of his disability." [16] The court heard testimony that, as a result of the Guns Free Schools Zones Act of 1994, 20 U.S.C. § 7151, students in possession of firearms must be expelled for a *minimum* of one year. It also appears undisputed that it is the general (although apparently unwritten) policy or procedure [17] of the School District that all students expelled, at least for having guns on campus, are not permitted immediately to return to the school from which they were expelled following the end of their term of expulsion, but must remain in transitional programs at an "alternative school" for at least one semester thereafter.[18] Thus, it appears that the school treated J.B., after he was discovered in possession of a handgun at school, in the same way it would treat a student without a disability.

Globally, the principal Congressionally articulated policy basis for IDEA is the national policy of "ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." 20 U.S.C. § 1400. More specifically, the regulations upon which the hearing officer relied also evidence a concern with ensuring that individuals with disabilities are afforded equal,

---

**16.** Doc. no. 4, Ex. 5 (copy of "IEP Class III [Infraction] Review" by J.B.'s IEP Team), at 2.

**17.** Doc. no. 4, Ex. 23 (decision of the hearing officer), at 11–12, 15.

**18.** *See* doc. no. 4, Ex. 23, at 11–12. The court also heard significant, unchallenged testimony to this effect at the hearing held on May 25, 2011.

not superior, access to certain activities outside the classroom. 34 C.F.R. § 300.107 states that it is the school district's duty "to provide nonacademic and extracurricular services and activities in the manner necessary to afford children with disabilities an *equal opportunity* for participation in those services and activities." 34 C.F.R. § 300.117 provides that "each public agency must ensure that each child with a disability participates with nondisabled children in the extracurricular services and activities to the maximum extent appropriate to the needs of that child."

Section 290–8–9–.10 of the Alabama Administrative Code regulations implementing the state's IDEA program state that "[e]ach student with a disability who successfully completes his or her IEP must be awarded a graduation certificate and afforded the opportunity to participate in public agency activities related to graduation." Ala. Admin. Code § 290–8–9–.10(9)(e). However, that same provision goes on to state that "[i]t is the intent and desire of the State Board of Education that graduation activities and procedures for awarding the standard, advanced or any other diploma or graduation certificate to an eligible student, *including a student with a disability*, be integrated and *identical with no distinctions/differentiations* made in regard to the way the exit document is awarded or presented." *Id.* at subsection (g) (emphasis supplied).

Thus, all of the implementing regulations dictate that the student with disabilities be treated equally, with no distinctions between the treatment afforded him and non-disabled students *because* of his disability. Failure to do so would presumably deprive the student of a FAPE.

All of the uncontroverted evidence indicates, however, that a non-disabled student in J.B.'s same situation would not be permitted to return to CCHS, and would not be permitted to participate in the graduation ceremony. Accordingly, excluding J.B. from commencement exercises did not deprive him of equal opportunity to participate in that nonacademic activity. It therefore did not deprive him of a FAPE. The only basis for the hearing officer's determination to the contrary appears to be as follows: "The testimony by [a district official] that hypothetically, [J.B.] could have returned to Clay–Chalkville High School for his last semester but for 'standard procedure' ... [indicates] that the proper setting could have been [CCHS] and if so, he would be now likely be *[sic]* scheduled to graduate as part of his class, arguably as part of his IEP in the form of an extracurricular activity." [19] In addition to the blatant speculation in that sentence, the hearing officer provides no reason why exemption from a generally applicable disciplinary procedure would be part of providing J.B. a FAPE when he was not disciplined for any reason related to his disability. Doing so would require precisely what these regulations prohibit— namely, treating J.B. differently because of his disability.

**B. To Come to His Determination, the Hearing Officer Reversed the Burden of Proof**

■ The Supreme Court has made clear that, as a general rule, the person challenging a decision under the IDEA bears the burden of persuasion. *Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 56, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005) (holding that burden of proof rested upon student challenging school's action under IDEA rather than on school); 78A C.J.S. *Schools*

19. Doc. no. 4, Ex. 23, at 24.

*and School Districts* § 980 ("In proceedings brought under the Individuals with Disabilities Education Act (IDEA), as amended by the Individuals with Disabilities Education Improvement Act of 2004, the burden of proof ordinarily falls on the party seeking relief.") In *Schaffer*, the Supreme Court affirmed a Fourth Circuit decision reversing a District Court's order that remanded to the Administrative Law Judge ("ALJ") a student's challenge under the IDEA on the basis that the ALJ should have put the burden of persuasion on the school district. *Schaffer*, 546 U.S. at 55, 61, 126 S.Ct. 528.

Here, a central basis for the hearing officer's determination was that *the school district* had not provided clear evidence that graduation *was not* envisioned as part of J.B.'s IEP.[20] Upon that basis he made his central finding "[t]hat the graduation activities and exercises scheduled for Clay–Chalkville High School on May 26, 2011 in which the child seeks to participate is an extracurricular activity envisioned by the IEP team as part of the delivery of a FAPE through the IEP put in place for the child...."[21] Nowhere in that opinion, however, was there a discussion of what evidence actually supported the proposition that J.B.'s IEP Team considered commencement exercises part of the extracurricular activities he should be afforded as part of his FAPE. In fact, a careful review of the relevant IEP shows only that there would be subsequent discussions "to determine [J.B.'s] participation in graduation activities" and, immediately following that sentence, a reiteration that his "previous behavior in the public setting prevents his

participation in the general education setting."[22] All other discussion of commencement ceremonies is in the portion of the IEP describing respondent's "Parental Concerns" and her statement of intention to contact the Jefferson County Board of Education to "discuss [J.B.'s] participation in graduation activities."[23]

Indeed, *all* of the discussion of that issue revolves around the hearing officer's determination that the school district "could not provide testimony that the IEP team did not envision the graduation activity at [CCHS] as part of the IEP, nor did they provide documents to support that the activity was not part of the envisioned IEP."[24] Based upon the school district's failure to prove absence of intent on the part of the IEP team, the hearing officer stated that "the most logical conclusion is to presume that the IEP anticipated that the child might be able to participate in the graduation activities at [CCHS]."[25] In so doing, the hearing officer functionally reversed the burden of proof that should, properly, have been placed upon the petitioner in that instance, the respondent in this action.

## C. No Evidence Supports the Hearing Officer's Determination that Failure to Return J.B. to CCHS after his Expulsion Denied Him a FAPE

■ The hearing officer's conclusion was that, ultimately, J.B. was entitled to return to CCHS at the end of his one year term of expulsion and, therefore, that once J.B. returned he, like all other students at the school, would be entitled to participate in commencement exercises.[26] That con-

20. Doc. no. 4, Ex. 23, at 20–22.

21. Doc. no. 4, Ex. 23, at 25–26.

22. Doc. no. 4, Ex. 8, at 1.

23. *Id.*

24. Doc. no. 4, Ex. 23, at 21.

25. *Id.* at 23.

26. *Id.* at 25.

clusion appears without even the barest discussion from the hearing officer, and without any apparent basis in the evidence set forth in the early pages of his order. Moreover, this court's *de novo* review of the record has uncovered no evidentiary support for that finding.

It is undisputed that all discussions between the mother and school officials indicated that J.B. would *not* return to CCHS to complete his secondary schooling. True, as the hearing officer stated, it was not absolutely clear where he would go after completion of his one-year expulsion, but there is not even a scintilla of evidence that it was *ever* contemplated or discussed that he would return to CCHS.[27] Further, the mother praised and continued to praise the education and related services her son received at Rushton, and it was at her request (and at the expense of the School Board) that J.B. continued to attend Rushton for an additional semester, rather than moving to an "Alternative School" following the completion of the academic year (November 2009 to November 2010) at Rushton.[28] It also appears undisputed that the School Board had some variety of policy or "procedure" that precluded students from returning to the school from which they were expelled immediately after the tenure of their technical expulsion was completed. Those students are sent to an alternative school for a one-semester "transition" from their expulsion back into the school from which they were expelled. As the hearing officer noted, there was "no testimony as to the actual number of children who returned to the system after the one year expulsion so it is not clear if children ever come back or not after the one year expulsion period followed by the additional semester at the alternative setting." [29] Respondent's burden before the hearing officer would have required presentation of some testimony or documentary evidence to demonstrate that the application of this general policy to J.B. was based upon his disability, as opposed to being based upon the basis of his past behavior.

There is, however, no basis whatsoever in the hearing officer's decision for concluding that Rushton did not substantively provide J.B. a high-quality education that satisfied the school district's FAPE obligations. Moreover, there is no suggestion in the record before the court that it was ever even *argued* that having J.B. complete his final semester at Rushton—notably at his mother's request—deprived him of a FAPE. Certainly, nothing in J.B.'s IEP contemplates his return to CCHS or indicates that Rushton was inadequate. Yet the hearing officer stated, as the central tenet of his order, that J.B. "would be due to be returned to [CCHS] as the proper educational placement and pursuant to his right to a FAPE and should now be returned to such setting in order to provide the FAPE he would be due." [30] The hearing officer's determination that J.B. would also be entitled to graduate was based fundamentally and inextricably upon that conclusion.[31]

The only arguable basis for that decision appears to be that it was "not clear to [the hearing officer] why the mother, or perhaps the IEP team as well, was not privy to more of a discussion as to the 'standard procedure' in place that would prevent the child from returning to [CCHS] for the spring semester of his senior year after his

27. *Id.* at 11–12.

28. Doc. no. 4, Ex. 23, at 12.

29. *Id.* at 15.

30. Doc. no. 4, Ex. 23, at 25.

31. *Id.*

year of expulsion." [32] In addition to seemingly reversing the burden again (*i.e.*, putting the burden on the school district to explain why its procedure, which was explained to respondent at the time of the expulsion,[33] *should not* be followed), it is hard to understand how the fact there was not "more of a discussion" than what discussion there undisputedly was could deprive J.B. of a FAPE. There clearly *was* a discussion. Moreover, as noted above, that discussion was about the consequences for a serious disciplinary infraction unrelated to J.B.'s disability, and there is simply no evidence that there was any decrease in the quality of J.B.'s education or the quality of the special accommodations afforded him because he spent his last semester (at his mother's request) at Rushton. In short, there is no evidentiary basis for the central finding of the hearing officer that J.B. was deprived of a FAPE because he did not attend CCHS during his final semester of high school. Because the hearing officer's decision that J.B. was entitled to attend commencement exercises critically depended upon that determination, the absence of any evidence to support it fatally undercuts the rationale for the hearing officer's order.

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, the court finds that the hearing officer's decision that is challenged in petitioner's Motion for Emergency Preliminary and Permanent Injunction Relief was rendered in error and, therefore, petitioner's motion for emergency injunction relief against its enforcement is due to be, and the same hereby is, GRANTED. It is ORDERED, ADJUDGED, and DECREED that the implementation of the hearing officer's decision is hereby enjoined to the extent that it purports to direct or mandate that petitioner permit J.B. to attend the commencement exercises at Clay–Chalkville High School scheduled to occur on May 26, 2011 at 4:30 p.m. Further, as this decision ends the dispute between these parties over which this court would have present jurisdiction, the Clerk is directed to close this file. Costs are taxed as paid.

---

32. *Id.* at 23.

33. Doc. no. 4, Ex. 2, at 2.